THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RY. CO. *v.* LINDNER.

266

(Decided February 24, 1931.)

*Messrs. Harmon, Colston, Goldsmith & Hoadly,* for plaintiff in error.

*Mr. James G. Stewart,* for defendant in error.

HAMILTON, J. The Cleveland, Cincinnati, Chicago & St. Louis Railway Company brought a proceeding in the probate court of Hamilton county, Ohio, seeking to appropriate certain property of the defendant, Lewis F. Lindner, for railroad purposes.

The court, on the preliminary hearing, found the railway company entitled to appropriate the property which it sought, and impaneled a jury to ascertain the value of the property taken and the damage to the residue.

The property of the defendant Lindner was a farm of approximately 92 acres of land. The farm was divided by the highway, running north and south, leaving about 82 acres of naked land lying on the west side of the highway and the balance on the east side. On the tract on the east side were located all of the farm buildings, consisting of an eight-room brick house and outbuildings. The orchard and gardens were also located on this tract.

The land sought to be appropriated by the railway company was all off the east tract, and included the land on which were located the house and buildings, orchard, gardens, etc., amounting to 6.44 acres.

The jury assessed the value of the land taken with the buildings at $15,000, and the damage to the residue at $12,000. The probate court confirmed the verdict of the jury and entered judgment for the amount of the verdict so assessed.

The railway company prosecuted error to the court of common pleas, which court affirmed the judgment of the probate court. From the affirmance of the judgment by the court of common pleas, the railway company prosecutes error to this court.

Two grounds of error are specified and argued:

First, error in the admission of evidence offered by the defendant.

Second, the verdict is excessive and against the weight of the evidence.

The first proposition, the wrongful admission of

evidence offered by the defendant, is that one expert witness was asked what was the damage to the residue of the defendant's land by reason of the appropriation, and it is argued that this was a question for the jury. Undoubtedly that is ultimately a question for the jury to determine, but an examination of the record discloses that the witness Moessinger had given expert evidence of the value of the land taken and the damage to the residue, and had given his figures and his method of arriving at the same, and the evidence as to the damage to the residue only came out in ascertaining his method in arriving at his estimates. It is not an instance of merely asking a witness: "What was the damage to the residue?" He was cross-examined at great length and the same questions were developed on cross-examination. We see no prejudicial error in this situation.

It is next complained that the court erred in admitting evidence of the tract as an entirety. What we have said with reference to the first question of error complained of applies with like force to this proposition.

It is argued that the court erred in admitting evidence of sales in remote parts of the county, and it is suggested that the court admitted evidence of the value of property on Indian Hill, and of lands on Montgomery Road, near Silverton, and on Reading Road. It is argued that these properties were so remote from the property in question that it was an abuse of discretion on the part of the trial court to permit evidence as to values of these properties. It is so contended and much evidence was introduced tending to give the farm in question a poten-

tial subdivision value, and there is sufficient evidence disclosed by the record to give it this potential value. Just how remote from the farm in question the properties were, of which the values were testified to, is not disclosed by the record. The court may have some knowledge, but it cannot take judicial notice of the location of these properties. A great deal of evidence in regard to these properties was brought out testing the knowledge of values of real estate by the expert realtor giving the evidence. Moreover, the first evidence given with reference to remote properties was elicited by counsel for the railway company, on cross-examination, where this counsel asked the expert witness questions concerning his laying out of subdivisions in and around Cincinnati, and how far out of the city of Cincinnati he had planned such subdivisions. In response to which question the witness stated that he went out as far as Kennedy Heights, Terra Alta, and beyond Silverton, and near Loveland, Ohio, where the property values were low.

It appears that the other sections, concerning which testimony was given and complained of, were more highly developed subdivisions.

Just what the relative situation between the properties and the farm in question is, is not clearly developed in the evidence, and it is apparent, therefore, that this court cannot say the trial court abused its discretion in the admission of this evidence, and particularly so when it would be admissible for the purpose of testing the knowledge of values of the expert realtor giving the evidence.

The next objection urged is that the court permitted to be introduced and read to the jury a letter

from Mr. Worcester, vice president of the railway company, to Mr. Crowley, the president. It is as follows:

"Dear Sir:

"The capacity of the present Sharon Yard is only 2600 cars. Cars through the yard in 1919 totaled 347,400 and in 1915 totaled 717,300. The average number per day through the yard in November 1925 was 2341 with a peak day of 2730 cars. Studies for efficiency indicate the capacity should be 6200 cars and that the present arrangement will not permit extensions without recasting the entire layout; also, it shows enormous losses due to congestion, delays and excessive costs in operating under present conditions.

"The entire project may ultimately result in revising the relative positions of the Pennsylvania and Big Four tracks in order that adequate eastbound hump with proper grades may be provided and ultimately all necessary additional facilities to make a complete operative unit, such as car repair tracks, weighing tracks, transferring tracks, caboose storage, etc., may be provided, and all street or road crossings not in grade be eliminated either by overhead viaduct or subway. It is contemplated that the ultimate expansion of this yard will result in a capacity of 6200 cars, adequate for classifying 2000 cars per day in each direction, at an estimated cost of $5,000,000.

"Economy studies show estimated savings based on 1925 business of approximately $260,000 per annum and the annual savings due to the construction of the first stage approximately $145,000.

"It is not thought desirable at this time to solicit

authority for construction of the complete yard unit because the uncertainty in the development of the Cincinnati Terminal situation. Negotiations are under way at this time for the L. & N. and C. & O., our principal feeders, to switch in proper order certain trains coming to us and to run them through from their yards with our power past Sharonville; and, vice versa, we will switch certain trains for them north of Sharon and run them back, so reducing the necessity for car capacity east bound into Sharon yards.''

It is claimed that the only issue in the case being the value of the property appropriated, and the damage to the residue, this letter would not have the slightest bearing on either of these issues.

It appears that this letter, which passed between the chief officers of the railway company, concerning the appropriation, was introduced and received upon the preliminary hearing on the question of the necessity for the appropriation, and is to that extent in the record. Counsel for the defendant reintroduced the letter at the trial on the question of value and damage to the residue. The letter indicates the improvements sought to be made in the railway company's properties upon the acquisition of this tract. It shows the contemplated expansion of the yards. Certainly the purposes for which the property appropriated was to be used would have a bearing on the damages to the residue. While it is true the letter contains estimates of savings in dollars and cents, and benefits to the railroad, it also contains matter which would affect the residue of the land.

The objection to the introduction of this letter

was a general objection. The letter containing some matter which was relevant, the introduction thereof would not be error as against a general objection. All questions concerning benefit to the railroad might have been eliminated, and the value of the letter limited to the part that showed the nature of the use, had a request been made. However, this proposition was taken care of in the charge of the court, when the court said, "the right to take is limited by the right of the owner to receive full compensation for the property that is taken, and damage to the residue, if any, *without regard to any benefit to the railroad company or to the owner which may accrue to either of them by reason of the taking.*"

No objection is made to the charge of the court and no question of law is raised thereby.

Complaint is made of the admission of evidence of the cost of filling and grading. As has heretofore been observed with reference to the evidence given by other witnesses, and complained of, these questions of cost came out in detailing the method of arriving at the expert evidence of values. It does appear in the evidence that grading along the front of the residue of the property would be made, cutting off the owner's frontage on the highway, which frontage was of considerable value, and particularly so if a potential subdivision proposition existed. A certain amount of grading or work would be necessary to provide access to the residue of the property. The fact that the witness in detailing his method of arriving at values should take into consideration the cost of making the property accessible could have no prejudicial effect as against the defendant, particularly in view of the fact that

there was a vast amount of evidence, unobjectionable and unobjected to, bearing directly and fully on the value of the land taken and the damage to the residue.

While the amount awarded by the jury for damage to the residue seems large, we cannot say as a reviewing court that the amount is so manifestly against the weight of the evidence as to require a reversal.

The trial of this case occupied several weeks. There were approximately twenty witnesses in the case, making a record of over 1,100 pages, together with the exhibits. The language of this court in the case of *Cleveland, C., C. & St. L. Ry. Co.* v. *Wehmeier,* 33 Ohio App., 475, at pages 484 and 485, 170 N. E., 27, 30, is particularly applicable to this proceeding in error. It is there stated:

"It is argued that there is a great deal of evidence wrongfully admitted on the part of the defendant, and evidence wrongly excluded, offered by the plaintiff.

"In a case as elaborate and extended as the case at bar, in which over 1,100 pages of evidence were taken, and between thirty and forty witnesses examined, it would be strange indeed if there was not considerable testimony of doubtful admissibility or lacking in probative value. The objections were largely directed to the qualification or lack of qualification of the witnesses to testify and give opinion values. On this question this court, in the case of *Cincinnati Street Ry. Co.* v. *Hickey,* 29 Ohio App., 399, at page 401, 163 N. E., 310, 311, in passing on the qualification of witnesses to give opinion evidence on damages, stated:

" 'Some of the witnesses, called to give opinion evidence, did not appear well qualified to give such opinion evidence; but this affected the weight, and not the admissibility, of the evidence.

" 'It is the rule that a reasonable amount of discretion may be exercised by the trial court in permitting witnesses to give opinion evidence, and, unless evidence so admitted appears to have been prejudicial, a verdict will not be set aside because of the court's ruling on its admission.'

"We have examined the evidence as pointed out in the brief of plaintiff in error, and are of opinion, taking into consideration the vast amount of competent evidence on the same subject, pro and con, that no prejudice resulted to the plaintiff in error in the court's rulings."

The majority of this court are of opinion that there is no prejudicial error requiring a reversal of this case, and the judgment is affirmed.

*Judgment affirmed.*

Ross, P. J., concurs.

CUSHING, J., dissenting. I dissent on two grounds: The introduction of the Worcester letter, and the introduction of evidence of the sales of other property, as there was no showing that it was similarly situated.