## SWANK v STATE

Ohio Appeals, 5th Dist, Muskingum Co

Decided November 25, 1931

Meenan & Walters, for plaintiff in error.
C. S. Leasure, Zanesville, for defendant
in error.

LEMERT, J.

The question presented in this case is whether the possession in a private residence of intoxicating liquor which has been unlawfully manufactured takes the private residence out of the category of a **bona fide** private residence.

The above quoted question is the only question involved as an issue in this case and presented for a decision by this court. This question brings us to a consideration of the statutes as follows:

Sec 6212-14: "The term 'possess' shall not apply to intoxicating liquors in a **bona fide** private dwelling."

Sec 6212-16: "No search warrant shall issue to search any private dwelling occupied as such, unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose, such as store, shop, saloon, restaurant, hotel or boarding house."

Sec 6212-27: "No place shall be regarded as a·**bona fide** private residence, under the laws prohibiting the liquor traffic, wherein liquors are possessed which have been illegally manufactured or obtained."

Sec 6212-27 further provides: "In the performance of the duties imposed upon them by law, the commissioner, deputies and inspectors, may at all reasonable hours enter in or upon all buildings, places or things, excepting such buildings, places or things, or parts thereof, as are used exclusively for **bona fide** private residence purposes, and no place shall be regarded as a **bona fide** private residence, under the laws prohibiting the liquor traffic, wherein liquors are possessed which have been illegally manufactured or obtained, provided that nothing in this act shall be construed to permit any person to enter or search, with or without a warrant, a **bona fide** private residence as herein defined."

An examination of these statutes will show that the provisions of §6212-14 and §6212-16, above quoted, were passed at the

same time as a part of the Crabbe Act. As the statutes stood at that time there were only two conditions under which a private residence could be searched, those conditions being as follows:

1. If the private dwelling was used for the unlawful sale of intoxicating liquor.

2. If it was used for some business purpose, such as a store, shop, saloon, restaurant, hotel or boarding house.

After the above statutes went into effect, it was found that liquor was being manufactured in private residences and also that in private residences liquor was being kept which had been unlawfully manufactured or unlawfully obtained. The law at this time, as found under §6212-16, was such that a private residence could not be searched unless a sale had been made or unless some part of the private dwelling was used for a business purpose, and private dwellings thereby were made very safe places for unlawful liquor violations, so long as no sales were made. As a result of this situation, whereby the officers were unable to search private dwellings in case there was no evidence of sale, although liquor was there manufactured or unlawfully obtained, the Legislature at its next session sought to remedy the condition, and did so, by including in the Miller Bill the provision above quoted from §6212-27, to the effect that, "No place shall be regarded as a **bona fide** private residence, under the laws prohibiting the liquor traffic, wherein liquors are possessed that have been unlawfully manufactured or obtained."

This language is perfectly clear, and it shows the clear intent of the Legislature to take a private residence out of the category of a **bona fide** private residence, if at that private residence liquors are possessed which have been unlawfully manufactured or obtained.

This case has been well presented in oral argument, and exhaustive and voluminous briefs have been furnished the court, and many cases have been cited of decisions made in Ohio by the Court of Appeals and Supreme Court upon the question here involved.

We find that, for a proper decision of this case, and applying the law as above quoted, we must look to the record that is before us of the testimony produced in the court below upon the motion to suppress and upon the hearing of the case upon its merits.

We find from the record, in the testimony of the defendant below, that at the time this raid was made, that he was living in a cottage house consisting of two bedrooms, two living rooms, a kitchenette and bath, and so far as the record shows he was living there alone. At the time the raid was made about 20 quarts of beer were found, a vessel containing 15 or 20 gallons of mash, a five gallon can of malt syrup, another can of malt syrup partly full, and three other empty cans, a number of boxes of beer caps, and about 17 cartons of empty bottles, several cases of empty bottles, not in cartons and showing evidence of having been used recently, several boxes containing several hundred beer caps, and many other vessels, bottles, implements and utensils used in the manufacture and making of beer.

The defendant in the court below, upon the hearing of the motion testified, as shown on page 7 of the record, that he was in the habit of buying extract in five gallon can lots at different times. He testified that a gallon of malt extract would make 20 gallons of beer, or 100 gallons for a five gallon can of extract, or that one can would make 400 quarts of beer. There were at least five such cans of extract, both filled and empty, there at the time of the raid, which would make 2000 quarts of beer.

The defendant in the court below testified, as shown on page 12 of the record, when asked the following question, "about how much beer has it been your custom to drink, giving whether or not you drink daily, and if daily, how much a day—your usual custom?" Answer: "Well, it is a common thing for me, if I am not feeling well, to drink three quarts before I go to bed." Again, on page 10 of the record, the defendant was asked concerning the beer, as to whether or not it was intoxicating, and his answer was "yes." He further stated, "I don't deny the fact that I have given beer away on several occasions." Question: "Have you given away any beer to your friends and acquaintances?" His answer was, "Yes, sir."

So that, taking the record before us in the instant case, we find and believe that the house or residence in question, while it may have been plaintiff in error's home or residence, it was not such residence as was contemplated by the Legislature when it passed §6212-27, known as a **bona fide** private residence. The record before us, and the defendant's own admissions in the court below, clearly show that this house or residence had ceased to be a **bona fide** private residence and was a shop or manufactory. It was not the intent of the Legislature to permit one to engage in the making and manufacturing of beer or intoxicating liquors to the extent that the record in this case shows the plaintiff in error was indulging in, and to permit him to say that he was making the volume and amount

of beer that the record shows he was making for his own individual use.

We therefore find, on the record before us and construing the law as above set forth, that the beer and liquors found, and possessed by plaintiff in error at the time of the raid, were illegally manufactured and obtained. It therefore follows that the court below was right when he overruled the motion to suppress the evidence and upon a final hearing of the case he was right in finding the defendant guilty as charged.

It therefore follows that the judgment of the Common Pleas Court will be and the same is hereby affirmed.

Exceptions may be noted.

SHERICK, PJ and MONTGOMERY, J, concur.