NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2359
_____

BENECARD SERVICES, INC.,
Appellant

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY,
f/k/a Darwin National Assurance Company;
ATLANTIC SPECIALTY INSURANCE COMPANY;
RSUI INDEMNITY COMPANY;
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA;
ACE PROPERTY & CASUALTY INSURANCE COMPANY
_____

No. 20-2360
_____

ALLIED WORLD ASSURANCE COMPANY (US) INC

v.

BENECARD SERVICES, INC.,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-15-cv-08593 & 3-17-cv-12252)
District Judge: Honorable Michael A. Shipp
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 23, 2021

Before:  SMITH, *Chief Judge*, MATEY and FISHER, *Circuit Judges*.

(Filed: September 8, 2021)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

This is an insurance coverage dispute. Appellant Benecard Services, Inc. is a company that manages prescription drug benefit plans. In 2015, it was sued by its onetime business partner, another company that sponsors such plans under Medicare Part D. The lawsuit included claims for breach of contract and fraudulent misrepresentation. In 2016, the lawsuit settled. Benecard sought coverage for its defense and settlement costs under various business insurance policies it held. Denials of coverage, and then litigation, followed. In 2020, the District Court granted summary judgment to the insurers in both cases composing this litigation—one case involving Benecard's directors and officers liability and general liability policies, and another involving its errors and omissions liability policy. Benecard timely appealed, and we consolidated its appeals for disposition. Because we conclude that the District Court did not err, and that summary judgment for the insurers was warranted, we will affirm.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

I.[1]

Benecard first challenges the District Court's grant of summary judgment to its errors and omissions insurer, Allied World Specialty Insurance Company. Allied World paid Benecard's defense costs to the tune of $3.8 million, but declined to indemnify any portion of the settlement. The District Court, in a commendably thorough opinion, held that indemnification was not required, because Benecard settled the underlying lawsuit against it without obtaining Allied World's prior written consent—an express condition of coverage under the policy's consent clause.[2]

Benecard challenges that holding on three grounds, which we address in turn.[3] First, Benecard argues that the District Court erred by drawing inferences in favor of

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. "We review summary judgments de novo, applying the same test as the District Court." *Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Hum. Servs.*, 796 F.3d 293, 300 (3d Cir. 2015). Under that test, "[s]ummary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

[2] *See* App. 1486 ("No coverage is available under this Policy for . . . any settlements or settlement offers made[] without the Underwriter's prior written consent.").

[3] In a brief footnote, Benecard mentions a fourth ground, asserting that Allied World's "lack of consent" defense has been "waive[d]." Appellant's Br. 64 n.21. Ironically, this waiver argument is itself waived. *See Prometheus Radio Project v. F.C.C.*, 824 F.3d 33, 53 (3d Cir. 2016) (argument "relegated to a footnote" considered waived); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

Allied World, the moving party, contrary to settled summary judgment principles.[4] Specifically, it says the Court improperly inferred that Benecard's defense costs did not exhaust the policy's $5 million coverage limit, and that Benecard merely "anticipated" its defense costs would do so.[5] This mattered, Benecard says, because according to its legal theory, exhaustion of the coverage limit excused Benecard's failure to obtain prior written consent.

Benecard fails to support this excuse theory with any citation to legal authority, so we decline to accept it. We also disagree that the District Court drew any improper inferences. The record shows that the Court merely pointed to the policy's plain language, which links exhaustion to "payment" by the insurer—rather than accrual by the insured—of defense costs.[6] The Court then referred to the undisputed facts and concluded that Benecard did not exhaust its coverage limit. That conclusion is amply supported by the record, above all by Benecard's express admission that Allied World "paid defense counsel only $3.8 million - rather than its limits of $5 million."[7]

Next, Benecard argues that the District Court erred in interpreting applicable New

---

[4] At the summary judgment stage, "[a]ll facts should be viewed 'in the light most favorable to the non-moving party,' with 'all reasonable inferences [drawn] in that party's favor.'" *Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727, 733 (3d Cir. 2019) (second alteration in original) (quoting *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).
[5] App. 132.
[6] App. 1486.
[7] App. 1902.

4

Jersey law. It says that, contrary to the District Court's view, Allied World may not enforce the consent clause unless it proves "appreciable prejudice."[8] Again, we disagree. New Jersey's appreciable prejudice doctrine applies to "'occurrence' policies, [in which] the policy holders are unsophisticated consumer[s] unaware of all of the policy's requirements."[9] However, the doctrine has "no application whatsoever to a 'claims made' policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage."[10] That is because "claims made" policies are generally held by "knowledgeable insureds, purchasing their insurance requirements through sophisticated brokers[.]"[11] Here, Benecard's errors and omissions policy is a "claims made" policy.[12] Benecard itself is not an individual consumer, unaware of the terms of its policy, but a corporate insured which obtained that policy through its broker Wells Fargo.

Nevertheless, Benecard insists that appreciable prejudice must be shown here because this case involves a consent requirement, rather than a notice requirement. The Supreme Court of New Jersey has recently indicated otherwise, stating flatly that it "has *never* afforded a sophisticated insured the right to deviate from the *clear terms* of a

---

[8] *Ohaus v. Cont'l Cas. Ins. Co.*, 679 A.2d 179, 184 (N.J. App. Div. 1996) (internal quotation marks omitted).

[9] *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1080 (N.J. 2016) (internal quotation marks omitted) (second alteration in original).

[10] *Id.* at 1078 (emphasis omitted) (quoting *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 406 (N.J. 1985)).

[11] *Id.* at 1081 (alteration in original) (internal quotation marks omitted).

[12] App. 1482.

5

'claims made' policy."[13] The consent clause is a clear term of Benecard's claims made policy. Accordingly, Allied World need not show appreciable prejudice to enforce it.

Benecard's third argument against the District Court's errors and omissions ruling centers on Allied World's own conduct leading up to the settlement. Benecard says Allied World "operate[d] with less than candor" and "engaged in 'gotcha' claims handling," because it knew Benecard was considering (and then actively negotiating) settlement, yet it failed to "remind [Benecard] of the E&O Policy's Consent Clause."[14] According to Benecard, this amounted to a violation of Allied World's duty of good faith and fair dealing, and of New Jersey statutes and regulations implementing that duty. In addition, Benecard says, Allied World's conduct left it equitably estopped from denying coverage based on Benecard's failure to obtain consent.

We are not persuaded by these arguments. On good faith and fair dealing, Benecard relies on *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*.[15] There, a tenant notified its landlord, nineteen months before the deadline (and repeatedly thereafter), of its intent to exercise a lease option.[16] The landlord responded with a "nineteen-month posture of silence, . . . punctuated by written and

---

[13] *Templo Fuente De Vida Corp.*, 129 A.3d at 1081 (emphases added); *see also Sparks v. St. Paul Ins. Co.*, 495 A.2d 406, 416 (N.J. 1985) (emphasizing "the total inapplicability of the [appreciable prejudice] doctrine to a true 'claims made' policy" in New Jersey).

[14] Appellant's Br. 56, 62-63.

[15] 864 A.2d 387 (N.J. 2005).

[16] *Id.* at 389.

verbal evasions and delay."[17] It also engaged in "subterfuge," for instance by not challenging the tenant's formal declaration, while applying for a loan, that it had indeed "exercised its option."[18] This conduct "lulled [the tenant] into believing it had exercised the lease option properly."[19] Accordingly, the New Jersey Supreme Court concluded, the conduct violated the landlord's duty of good faith and fair dealing.[20]

Here, accepting Benecard's version of events, there is nothing remotely approaching the pattern of evasion and subterfuge, over more than a year and a half, displayed by the landlord in *Brunswick Hills*. Allied World was informed that settlement negotiations were a possibility just five to six weeks before the settlement was consummated. Benecard correctly states that Allied World never reminded it, during that period, of the consent clause. But there is no evidence that Allied World led Benecard to believe the consent clause had been satisfied, like the evidence in *Brunswick Hills* that the landlord left unchallenged the tenant's declaration that it had "exercised its option."[21] Here, Benecard made no analogous declaration that it had satisfied the consent clause. Benecard points to an email from Allied World's representative, remarking, in apparent reference to the settlement: "I hope that everything was finalized."[22] But this email was

---

[17] *Id.* at 390.
[18] *Id.* at 398.
[19] *Id.* at 399.
[20] *Id.*
[21] *Id.* at 398.
[22] App. 2656.

sent five days *after* the date on which, by Benecard's own account, it informed Allied

World that "a confidential settlement-in-principle" had already been reached.[23] For these

reasons, *Brunswick Hills* does not control this case.

Benecard fares no better with respect to the New Jersey statutes and regulations it

cites.[24] It suggests in passing that Allied World violated these provisions, but it never

clarifies how, and cites nothing in the record to substantiate its claim. Likewise,

Benecard's estoppel argument fails. "To establish a claim of estoppel, a party must prove

. . . 'that the [other party's] alleged conduct was done, or representation was made,

intentionally or under such circumstances that it was both natural and probable that it

would induce action.'"[25] "Further, the conduct must be relied on, and the relying party

must act so as to change his or her position to his or her detriment."[26] Here, Benecard

asserts that Allied World intentionally maintained "silence on the 'lack of consent'

issue."[27] But it fails to explain how it "relied on" this silence, or how Allied World's

silence during the relevant period "induce[d]" Benecard to "change [its] position to [its]

detriment."[28] Additionally, Benecard cites no authority that would support employing the

estoppel doctrine as Benecard seeks to employ it here—in effect, as a vehicle for

---

[23] App. 2802.

[24] *See, e.g.*, N.J. Stat. Ann. § 17:29B-4; N.J. Admin. Code. §§ 11:2-17.5, 17.8.

[25] *Boritz v. N.J. Mfrs. Ins. Co.*, 968 A.2d 1223, 1227 (N.J. App. Div. 2009) (quoting *Miller v. Miller*, 478 A.2d 351, 355 (N.J. 1984)).

[26] *Id.* (quoting *Miller*, 478 A.2d at 355).

[27] Appellant's Br. 66.

[28] *Boritz*, 968 A.2d at 1227 (quoting *Miller*, 478 A.2d at 355).

imposing on insurers an obligation to remind their insureds that they must comply with conditions precedent stated plainly in the policy.

In sum, Benecard has not shown that the District Court erred in granting summary judgment to Allied World in the errors and omissions action. The operative policy's consent clause states that "[n]o coverage is available under this Policy for . . . any settlements or settlement offers made[] without [Allied World's] prior written consent."[29] It is undisputed that Benecard failed to obtain that consent. Accordingly, the District Court correctly concluded that Allied World is not required to indemnify the settlement.

## II.

Benecard next challenges the District Court's grant of summary judgment to Allied World in the action involving its directors and officers liability policy. There, the Court held that Benecard's claim fell within that policy's "Third Party" and "Professional Services" exclusions.[30] Benecard contends this was reversible error, because in its view the policy's multiple exclusions conflict, creating an ambiguity that must be resolved in Benecard's favor. We disagree.

Coverage exclusions in insurance policies "are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public

---

[29] App. 1486.
[30] App. 465, 478 (capitalizations altered).

policy.'"[31] The exclusions at issue here meet this standard. The "Third Party" exclusion unambiguously bars coverage for claims involving, among other things, "alleged . . . misleading statement[s] or breach[es] of duty in connection with the rendering of . . . services to a third party."[32] The "Professional Services" exclusion likewise unambiguously bars coverage "relating to the rendering [of] or failure to render any professional services."[33] These exclusions sweep broadly and overlap to some degree, with one another and with a third exclusion Benecard mentions.[34] But there is nothing unclear or uncertain about their language. Nor does the overlap itself create an ambiguity. As written, the exclusions straightforwardly bar coverage for the underlying lawsuit against Benecard, which alleged that Benecard misrepresented its expertise in managing prescription drug plans, and breached its contractual duties by failing to provide satisfactory member enrollment, claims adjustment, and other services. Contrary to Benecard's protestations, no adverse inferences are needed to reach this conclusion.

Benecard argues that enforcing the exclusions as written renders coverage illusory,

---

[31] *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)).

[32] App. 465.

[33] App. 478.

[34] Under the "Insurance Company E&O" exclusion, no coverage is available for claims arising from "the rendering of or failure to render professional services," including but "not limited to . . . the handling and adjusting of claims arising under an insurance policy." App. 474. As Benecard now points out, the overlap between these various exclusions is not complete. But their adoption of different language and different carve-outs does not create inconsistency or ambiguity in the policy.

10

and that the policy should instead be interpreted to honor Benecard's "objectively reasonable expectations."[35] However, coverage here is not illusory, because the exclusions leave intact the policy's coverage for breaches of duty by company executives acting in their executive capacity—the typical domain of directors and officers liability insurance.[36] As for Benecard's objectively reasonable expectations, such expectations can overcome the plain meaning of a policy only "in exceptional circumstances."[37] We have held that "the 'exceptional circumstances' that might allow a court to construe a clear and unambiguous policy exclusion in accordance with the objectively reasonable expectations of the insured, rather than in accordance with the plain language of the exclusion, arise only when a literal application of the exclusion would also violate public policy."[38] Benecard does not contend that enforcing the exclusions here would violate public policy. Thus, the exclusions are enforceable as written.

In sum, Benecard has not demonstrated any error by the District Court in granting summary judgment to Allied World in the directors and officers action.

### III.

Next, Benecard challenges the District Court's grant of summary judgment to

---

[35] *Doto v. Russo*, 659 A.2d 1371, 1376-77 (N.J. 1995).

[36] *See, e.g.*, 1 Couch on Ins. § 1:35 (noting that directors and officers policies commonly provide coverage for "liability based on official actions of corporate officers and directors").

[37] *Doto*, 659 A.2d at 1377.

[38] *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006) (applying New Jersey law).

another of its directors and officers liability insurers, Atlantic Specialty Insurance Company. The Court concluded that Benecard's policy with Atlantic Specialty does not provide coverage for the underlying lawsuit against Benecard, because that suit falls within the policy's exclusion for "Managed Care Activities."[39] Benecard contends this was error. In its view, the Managed Care exclusion "specifically excludes from its purview misstatements and misleading statements" like those alleged in the lawsuit against Benecard.[40]

Benecard's theory is foreclosed by the policy's plain language. Contrary to Benecard's assertion, the Managed Care exclusion does not specifically address misstatements or misleading statements. Rather, it covers claims involving "*any actual or alleged act, error or omission* in the performance of . . . Managed Care Activities."[41] As the District Court concluded, the term "act" is broad enough to encompass both sorts of conduct alleged in the underlying lawsuit against Benecard—misstatements or misrepresentations about Benecard's expertise, and poor or non-performance in its management of the prescription drug plans. Moreover, we find no merit in Benecard's contention that the District Court treated the Managed Care exclusion as ambiguous, and then improperly resolved that ambiguity against Benecard. On the contrary, the District Court concluded that the exclusion "unambiguously" bars coverage for Benecard's

---

[39] App. 332.
[40] Appellant's Br. 92.
[41] App. 332 (emphasis added).

claim.[42]

Benecard's remaining arguments are likewise unavailing. The District Court's reading of the Managed Care exclusion does not render coverage illusory simply because it bars coverage for the particular claim Benecard filed. The exclusion concerns "Managed Care Activities," defined to include services like the ones Benecard performed while managing the prescription drug plans, such as enrollment and claims handling.[43] But it does not affect coverage for alleged wrongful acts by Benecard's executives, or other forms of coverage provided under the policy.

Nor can we agree with Benecard's law of the case argument. "The 'law of the case . . . doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"[44] Benecard asserts that by declining to rule favorably on Atlantic Specialty's motion to dismiss, the District Court established, as law of the case, that Benecard is potentially entitled to coverage under the policy. But that is incorrect. The District Court's dismissal ruling did not "decide[] upon a rule of law," and thus did not create law of the case.[45] It merely concluded that Atlantic Specialty had, at that stage, failed to "establish the application of

---

[42] App. 96.

[43] App. 326.

[44] *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 207 (3d Cir. 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

[45] *Id.*

13

any exclusion *based on the face of the Complaint*."[46] That determination did not bind the Court's later decision on summary judgment.

Accordingly, we conclude that the Managed Care exclusion bars coverage for Benecard's claim, and that Benecard has not shown the District Court erred in granting summary judgment to Atlantic Specialty.

IV.

Benecard next challenges the District Court's summary judgment for Travelers Property Casualty Company of America, again in the directors and officers action. It argues that the District Court erred in concluding coverage was unavailable under two provisions of the Travelers policies. One provided coverage for the publication of material that "[u]nreasonably places a person in a false light."[47] Another provided coverage for the publication of material that "disparages a person's or organization's goods, products or services," provided the claim is brought by a person or organization that alleges it was disparaged.[48] In addition, Benecard contends the District Court erred in determining that only the 2012 Travelers policies, not the 2011 or 2013 policies, were potentially implicated by the underlying lawsuit against Benecard.

Again, we are unpersuaded. New Jersey law provides that if the terms of an

---

[46] App. 1678 (emphasis added).
[47] App. 956, 2115.
[48] App. 956, 2115.

14

insurance policy are clear, "courts should interpret the policy as written."[49] The District

Court did just that in construing the provisions at issue. On false light, the Court correctly

noted that the underlying lawsuit against Benecard did not include any claim for the

common law tort of false light. Benecard counters that the term "false light" can bear a

broader meaning. It points to allegations in the underlying lawsuit that it made statements

exaggerating its expertise in managing prescription drug plans, and misrepresenting its

plans for addressing various performance issues that arose. However, the lawsuit's

contention was not that these alleged misrepresentations *themselves* "place[d]"

Benecard's partner company "in a false light."[50] Rather, the lawsuit alleged that the

company suffered reputational damage due to Benecard's allegedly shoddy performance.

Similarly on disparagement, we disagree with Benecard's assertion that genuine

issues of material fact exist regarding its alleged misrepresentations. In the underlying

lawsuit, Benecard's partner company never claimed that Benecard's alleged

misrepresentations disparaged it. On the contrary, the subject of the alleged

misrepresentations was not the partner company's "goods, products[,] or services," but

Benecard's own abilities, expertise, and plans.[51] Finally, the District Court correctly

concluded that only the 2012 Travelers policies are implicated here, because the lawsuit

against Benecard alleged that "all of [Benecard's] misrepresentations and material

---

[49] *President v. Jenkins*, 853 A.2d 247, 254 (N.J. 2004).
[50] App. 956, 2115.
[51] App. 956, 2115.

15

omissions" were made "in the last few months of 2012 and the first two months of 2013," exclusively within the coverage period of the 2012 policies.[52]

V.

Lastly, Benecard argues that the District Court erred in ruling that it could not maintain bad faith claims against the insurers absent a finding of coverage. We disagree. Under New Jersey law, "a claimant who could not have established as a matter of law a right to summary judgment on the substantive [coverage] claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim."[53] Likewise for bad faith claims premised on alleged processing delays, "the test appears to be essentially the same."[54] Such bad faith claims are viable when the substantive claim for coverage is "valid" and "uncontested."[55] Here, however, Benecard could not establish a right to coverage. Additionally, Benecard's citation to the New Jersey Unfair Claim Settlement Practices Act[56] is unavailing, because that statute does not create a private right of action.[57] We conclude that the District Court did not err in granting summary judgment to the insurers on Benecard's bad faith claims.

---

[52] App. 263.
[53] *Pickett v. Lloyd's*, 621 A.2d 445, 454 (N.J. 1993).
[54] *Id.*
[55] *Id.*
[56] N.J. Stat. Ann. § 17:29B-1 *et seq.*
[57] *See, e.g.*, *Pierzga v. Ohio Cas. Group of Ins. Cos.*, 504 A.2d 1200, 1204 (N.J. App. Div. 1986).

## VI.

For the foregoing reasons, we will affirm.