

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2006

# Scheidemantle v. Slippery Rock Univ

Precedential or Non-Precedential: Precedential

Docket No. 05-3850

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Scheidemantle v. Slippery Rock Univ" (2006). *2006 Decisions.* Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3850

_____

JUDY SCHEIDEMANTLE,

Appellant

v.

SLIPPERY ROCK UNIVERSITY
STATE SYSTEM OF HIGHER EDUCATION


_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 04-CV-00331)
District Judge: Honorable Donetta W. Ambrose

_____

Argued October 4, 2006

Before: McKEE, AMBRO, and NYGAARD, Circuit Judges

(Opinion filed: December 19, 2006)

Neal A. Sanders, Esquire (Argued)
1924 North Main Street Extension
Route 8 North
Butler, PA   16001

Counsel for Appellant

Thomas W. Corbett, Jr.
   Attorney General
Craig E. Maravich (Argued)
   Deputy Attorney General
Calvin R. Koons
   Senior Attorney General
John Knorr, III
   Chief Deputy Attorney General
   Appellate Division
Office of Attorney General of Pennsylvania
564 Forbes Avenue, Sixth Floor
Manor Complex
Pittsburgh, PA   15219

Counsel for Appellee

---

OPINION  OF  THE  COURT

---

AMBRO, Circuit Judge

Judy Scheidemantle alleges that Slippery Rock University discriminated against her by refusing twice to promote her for

2

an advertised locksmith position and hiring unqualified male employees instead. Slippery Rock countered, in a motion for summary judgment, that it did not promote Scheidemantle because she was unqualified for the position. The United States District Court for the Western District of Pennsylvania agreed with Slippery Rock in granting its motion, determining that Scheidemantle failed to establish a *prima facie* case of gender discrimination because she did not meet the "objective qualifications" for the position.

Scheidemantle appeals to us. We must decide whether an employer that hires someone who lacks a job posting's objective qualifications can point to the absence of those same qualifications in another applicant as a basis for declining to hire that second applicant. We hold that it cannot, and in so doing conclude that Scheidemantle established a *prima facie* case of discrimination. We thus reverse the summary judgment and remand.

## I.      Factual Background

In March 2003, Slippery Rock posted a locksmith position vacancy, requiring two years of locksmithing experience. Scheidemantle, who worked for Slippery Rock as a labor foreman, applied along with three male applicants. She had completed a home study course in locksmithing and

3

subsequently received a professional locksmithing license,[1] but neither she nor the other applicants possessed the requisite two years of locksmithing experience.

Scheidemantle was not hired. Instead, Calvin Rippey, a younger employee from the University's "carpenter department," who had no prior coursework and less than two years' locksmithing experience, was selected for the position.

Scheidemantle filed a discrimination claim with the federal Equal Employment Opportunity Commission (EEOC),[2]

---

[1] Slippery Rock argues that Scheidemantle's invocation of her license as a measure of her greater qualifications is a red herring, because Pennsylvania does not require licenses for locksmithing. Indeed, legislative attempts to regulate locksmithing by requiring locksmith licenses have failed four times in Pennsylvania. *See* Locksmith License Act, S.R. 286, Sess. of 1997 (Pa. 1997); S.R. 1170, Sess. of 1995 (Pa. 1995); H.R. 1540, Sess. of 1975 (Pa. 1975); H.R. 2127, Sess. of 1974 (Pa. 1974). Nevertheless, a reasonable juror could view Scheidemantle's license as relevant to her qualifications to function competently as a locksmith.

[2] Scheidemantle also filed a claim with the Pennsylvania Human Relations Commission ("PHRC"), which decides discrimination claims under the Pennsylvania Human Relations Act. 43 P.S. §§ 951 *et seq*. However, pursuant to a "Worksharing Agreement" between the PHRC and the EEOC

alleging age and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*,[3] and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* ("PHRA").[4]  The EEOC dismissed her claim, noting that her

under which each entity agrees to yield investigatory authority to the Commission with which an action is first filed, and because Scheidemantle already had submitted the case to the District Court by the time the PHRC reviewed her petition, the Pennsylvania Commission declined to consider Scheidemantle's case.

[3] Title VII provides, in pertinent part, that

> [i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

42 U.S.C. § 2000e-2(a)(1).

[4] The relevant provisions state as follows:

> The opportunity for an individual to obtain employment for which he is qualified . . . without discrimination because of [, *inter alia*,] race, color, familial status, religious creed, ancestry, handicap or disability, age, [or]

5

home study course was the equivalent of 241 hours of actual locksmithing experience, whereas Rippey's actual experience included at least 941 hours. It concluded that Scheidemantle's "allegations that [she was] discriminated against because of [her] age and/or sex[] [could] not be substantiated. The evidence revealed that [Slippery Rock] selected the candidate with the most experience and/or training for the locksmithing position." App. at 88. Scheidemantle then filed suit in the District Court.

_____

sex . . . is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act.

43 P.S. § 953.

It shall be an unlawful discriminatory practice, unless based upon a *bona fide* occupational qualification . . .[,]

for any employer because of [, *inter alia*,] the race, color, religious creed, ancestry, age, sex, [or] national origin . . . to refuse to hire or employ or contract with . . . or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a).

6

In April 2004, Rippey was promoted out of the locksmith position and the now-vacant position was again posted in June 2004, this time requiring three years of locksmithing experience. Between April and June, Rippey informally had assigned Bradley Winrader, an employee from the carpenter department, to perform locksmithing duties on an ongoing basis. Winrader also had little experience in locksmithing and had completed no locksmithing coursework until November 2004, when he enrolled in a correspondence course after beginning his locksmithing assignment. Based on the record before us, Slippery Rock did not conduct interviews for or fill the 2004 position on a permanent basis.

In October 2004, Scheidemantle filed another complaint with the EEOC, which again rejected her case. She then amended her complaint before the District Court, wherein she alleged age and gender discrimination for both the 2003 and 2004 rejections. She also alleged, in the alternative, that the University's failure to promote her in 2004 was in retaliation for her 2003 EEOC filing.

The District Court determined that Scheidemantle was not qualified for the locksmith position according to the objective criteria listed in the position announcements, and consequently she could not establish a *prima facie* case of discrimination. She appeals to us, asserting only her gender discrimination claims.

7

## II. Jurisdiction

The District Court had subject matter jurisdiction over the initial case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III. Standard of Review

We exercise plenary review over the District Court's grant of summary judgment and apply the same standard the District Court should apply. *See, e.g.*, *Slagle v. County of Clarion*, 435 F.3d at 263 (3d Cir. 2006); *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005). Namely, a grant of summary judgment is proper where the moving party has established that there is no genuine dispute of material fact and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To demonstrate that no material facts are in dispute, the moving party must show that the non-moving party has failed to establish one or more essential elements of his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Hugh*, 418 F.3d at 267. In addition, a court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *Hugh*, 418 F.3d at 267.

To prevail on a motion for summary judgment, the non-moving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial. *See* Fed. R. Civ. P. 56(e). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh*, 418 F.3d at 267 (quoting *Anderson*, 477 U.S. at 251).

## IV. Discussion

### A. Legal Standards for Establishing Employment Discrimination

#### 1. Guiding Principles

Two principles guide our analysis. First, Title VII is a remedial statute, so it must be interpreted broadly. *See* 42 U.S.C. § 1604.34 ("These rules and regulations shall be liberally construed to effectuate the purpose and provisions of Title VII . . . ."); *see also Slagle*, 435 F.3d at 267 (citing *Bowers v. NCAA*, 346 F.3d 402, 431 n.24 (3d Cir. 2003) ("We recognize that []Title VII is clearly remedial civil rights legislation . . . .")); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) (noting that we must construe remedial statutes liberally).

Second, there is a low bar for establishing a *prima facie*

9

case of employment discrimination. *See, e.g.*, *Ezold v. Wolf*, 983 F.2d 509, 523 (3d Cir. 1993) ("In Title VII cases involving a dispute over subjective qualifications, we have recognized that the qualification issue should often be resolved in the second and third stages of the *McDonnell Douglas . . .* analysis [discussed below], to avoid putting too onerous a burden on the plaintiff in establishing a prima facie case . . . . Because the prima facie case is easily made out, it is rarely the focus of the ultimate disagreement.") (internal citations and quotation marks omitted); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990) ("The framework set forth in *McDonnell Douglas . . .* was never intended to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.") (internal citations omitted).

## 2. *McDonnell Douglas* Burden-Shifting Inquiry

To prevail on a claim for gender discrimination under Title VII and its analogous provision under the PHRA,[5] Scheidemantle must satisfy the three-step burden-shifting

---

[5] We construe Title VII and the PHRA consistently. *See Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *Slagle*, 435 F.3d at 262; *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Gomez v. Allegheny Health Serv., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995).

inquiry laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). First, she must establish a *prima facie* case of gender discrimination. To do that, she must demonstrate that (a) she was a member of a protected class, (b) she was qualified for the locksmith job to which she applied, and (c) another, not in the protected class, was treated more favorably. *See id.* at 802–03.

If she succeeds in making out a *prima facie* case, the burden shifts to the University to establish a legitimate non-discriminatory reason for its failure to promote her. *Id.* at 804–05. If the University is able to provide such a reason, Scheidemantle must then show that the proffered reason is merely a pretext for actual discrimination. *Id.*; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

## B.  District Court Decision

The District Court decided this case on the basis of *McDonnell Douglas*'s first step alone: that Scheidemantle could not establish a *prima facie* case of discrimination because she failed to meet the qualification prong. (The Court proceeded on the assumption that the other two prongs are satisfied, and we agree. Scheidemantle meets the first prong because, as a woman, she is a member of a protected class—"sex" under Title VII. She meets the third prong because the person who filled the position, thereby receiving more favorable treatment, was a

11

man, who does not fall within Title VII's gender protections.)[6]

Slippery Rock argues before us that the District Court's decision on Scheidemantle's lack of objective qualifications (two or three years' experience for the 2003 and 2004 positions, respectively) is correct, and this disqualifies her at the outset as lacking a *prima facie* case. Scheidemantle counters that she did not need to meet the objective qualifications of the job postings because she was at least as qualified as the male employees hired for and assigned to the job. Under *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005), she argues, an employer that hires a male who also fails to meet the objective

---

[6] Because it decided on the basis of the qualification prong, the Court did not address whether, for her 2004 claim, Scheidemantle met the third prong that an unprotected employee received more favorable treatment. The University would likely argue that she did not, since it did not formally fill the position but rather "assigned" it to another employee. However, we have held that an employee alleging gender discrimination need not demonstrate that the employer hired someone from a non-protected class in her place in order to make out a discrimination claim. See *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 354 & n.6 (3d Cir. 1999) (collecting cases to the same effect from the Courts of Appeals for the First, Second, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). This prong therefore cannot be in serious dispute because the assignment—though short of hiring—constitutes more favorable treatment, as it is an effective filling of the position.

12

qualifications for the posted job waives its ability to rely on objective criteria as the only way to meet the qualifications prong. We begin, therefore, with *Hugh*.

### C.  *Prima Facie* Case:  Qualifications Prong in Light of *Hugh*

Our Court in *Hugh* addressed whether an employer that promotes an employee who fails to meet a job posting's objective criteria can then point to the employee's failure to meet those criteria as a valid justification for employment termination. 418 F.3d at 268. Specifically, Hugh was promoted despite lacking the associated job posting's objective qualifications.  When she later was fired and filed a discrimination claim, did her failure to meet the job posting's objective qualifications mean that she also failed to meet the qualification prong for purposes of establishing a *prima facie* case of employment discrimination? We answered "no" because "it is a fair inference that the decision to promote Hugh was based on her satisfactory performance in her two previous positions [at the organization]."  *Id.*  In other words, the promotion "does establish [] plaintiff's qualification for [the] job." *Id.* (internal citations omitted). *Cf. Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) (holding that where an employer promoted an eight-year employee "to the 'lead man' position in his department . . ., satisfactory performance of duties . . . leading to a promotion clearly established his qualifications for the job.").

13

We have not decided yet whether the qualifications prong may be met implicitly through the promotion of an unqualified *third* party, as in this case, but *Hugh* provides guidance. There the employer was precluded from using a lack of objective qualifications defense, as previously it had ignored those posted qualifications in promoting the employee-plaintiff. Applying those principles to this case, *Hugh* stands for the proposition that, by departing from a job posting's objective criteria in making an employment decision, an employer establishes different qualifications against which an employee or applicant should be measured for the position.

This reading of *Hugh* is consistent with our review of past District Court decisions. *See, e.g.*, *Pinckney v. County of Northampton*, 512 F. Supp. 989, 998 (E.D. Pa. 1981), *aff'd*, 681 F.2d 808 (3d Cir. 1982) (concluding that, in order to establish a *prima facie* discrimination case, courts should look to the hiring decision to determine if the plaintiff was at least as qualified—not necessarily better qualified—as the person selected for the position.).[7] Moreover, any narrow reading of *Hugh* runs contrary to the generously construed, remedial civil

---

[7] Additionally, *McDonnell Douglas* explained that more favorable treatment to a non-protected applicant includes seeking someone "of complainant's qualifications" after rejecting the complainant. 411 U.S. at 802. That case does not directly control this one, since the complainant's objective qualifications there were not in dispute.

14

rights regime. If an employer could, with impunity, appeal to objective qualifications to defeat any female job applicant's challenge to its hire of an objectively unqualified male in her place, discrimination law would be reduced to bark with no bite. Title VII demands that employers apply the same standards for hiring women and other protected minorities that they apply to all other applicants.

Like *Hugh*, we look here to the hiree's qualifications to determine whether Slippery Rock created the inference that something other than the posted objective qualifications was sufficient. Rippey (the 2003 hiree), Windrader (the 2004 assignee), and Scheidemantle all lacked the objective qualifications listed in the job posting. If we compare the subsequent hiring decision to the objective criteria in this case, we can only conclude that something other than the job postings' two or three years of locksmithing experience was sufficient. The record shows that when Slippery Rock hired Rippey in 2003, it did so with the understanding that he had only three months of locksmithing experience on "light duty" while he was a carpenter and was recovering from surgery to both hands, App. 242–44, and Scheidemantle asserts that her training made her at least as qualified as Rippey. App. Br. at 13–14.[8]

---

[8] *But see* App. at 87 (Memo accompanying EEOC Dismissal, dated Dec. 16, 2003) ("The successful candidate, Calvin Rippey, met the required experience and/or training. Rippey has been part of the carpentry crew for the last twelve years and has

15

Similarly, when Slippery Rock assigned Winrader to the position in 2004, he had no locksmithing experience according to his resume. Nor had he completed a course in locksmithing as had Scheidemantle.[9] Applying *Hugh*, we conclude that, by

worked, at various times, as a locksmith. A computer printout for work accomplished by Rippey after 1997, when the Respondent [Slippery Rock] began maintaining such records for employees, revealed that he had at least 941 hours working as a locksmith. The [University] determined that Rippey's hours should be prorated for the time prior to the establishment of the 1997 computer records. Thus, based on the number of hours, as compared to [Scheidemantle's 'locksmith equivalent of 205 . . . hours' through her coursework], Rippey has substantially more hours in experience and/or training for the locksmith position."). We have no access to the documents referenced here and they did not figure into the District Court's decision. At oral argument, Scheidemantle contested the EEOC's determination, asserting Rippey could not demonstrate that he had the experience the Commission attributed to him. This question is clearly an issue of fact best left to a jury to decide.

[9]When deposed, Winrader revealed that he had some experience in locksmithing both inside the University while a carpenter and outside of the University ten years before his assignment to fulfill locksmith duties, but had no locksmithing coursework until November 2004—which he began after receiving the locksmithing assignment. But the information on the prior experience was unknown to Slippery Rock prior to the assignment, so it cannot be considered at the *prima facie* stage

16

departing from the objective requirements in its hiring decision, Slippery Rock thereby established different qualifications by which Scheidemantle—as a protected applicant who suffered an adverse employment decision—met the qualifications prong and completed her *prima facie* case of discrimination. The District Court thus erred by entering summary judgment in favor of Slippery Rock.

## V.  Conclusion

We hold that the District Court erred in determining that Scheidemantle failed to establish a *prima facie* case of employment discrimination against Slippery Rock on the basis that she failed to meet the job posting's objective qualifications. Because Slippery Rock placed similarly "unqualified" males in the locksmith position, it could no longer point to the job posting's objective qualifications as a valid reason for refusing to promote Scheidemantle. We thus reverse and remand for further proceedings.[10]

---

or at the pretext stage once the burden shifts to the University to provide legitimate reasons for failing to promote Scheidemantle. At most, Winrader's claims of prior experience (and thus greater qualifications than Scheidemantle) at deposition raise a disputed material issue of fact that should be tried before a jury.

[10]We surmise that Slippery Rock likely will file for summary judgment on at least the second stage of the *McDonnell Douglas* inquiry (other reasons beyond qualifications offered for not

hiring Scheidemantle). If so, we observe that disputed issues of material fact appear to linger—specifically, whether Scheidemantle was more qualified than Rippey or Winrader and whether Slippery Rock discriminates against women by affording training and promotion opportunities in locksmithing to men that it denies to women.

To flesh out the latter observation, the record before us suggests that the University has a history of failing to provide women with opportunities for locksmith training. It appears to assign employees from only the carpenter department to temporary locksmithing positions, such as the short-term rotating weekly assignments that Winrader and "most of the [other] carpenter people" held prior to Winrader's April 2004 longer-term assignment. *See* App. at 233 (deposition of former locksmith Guy Surrena). In addition, it appears that the carpenter department has not hired *any* woman since 1991 and perhaps before. If the temporary locksmith assignments are the only way of gaining experience through the University, whether those assignments are available only to employees in the all-male carpenter department is a relevant issue of fact for determining the ultimate question of whether discrimination has occurred. *See Ezold*, 983 F.2d at 540, 542–43 (noting that situations where an employer denies women "equal opportunities to . . . training and support" that prevents them from gaining exposure to the projects or experience that would qualify them for promotions can support an inference of discrimination); *cf. Jackson v. University of Pittsburgh*, 826 F.2d 230, 235 (3d Cir. 1987), *cert. denied*, 484 U.S. 1020 (1988) (recognizing that when an employer's discrimination prevents

18

blacks from accessing training and support, it creates a "reasonable inference that [the black employee] was treated less favorably than his white colleagues in ways that could explain any 'deficiency' in performance"). These disputed issues fall within the province of the finder of fact and cannot be resolved on summary judgment.

19