

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2008

# Fuentes v. Watchung

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2812

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Fuentes v. Watchung" (2008). *2008 Decisions.* Paper 805.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/805

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-2812

———————

GEORGE FUENTES,
                              Appellant

v.

BOROUGH OF WATCHUNG

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 04-cv-02811)
District Judge:  The Honorable Anne E. Thompson

———————

Submitted Under Third Circuit LAR 34.1(a)
June 25, 2008

———————

Before: SLOVITER, BARRY and ROTH, Circuit Judges

(Opinion Filed: July 24, 2008)

———————

OPINION

———————

BARRY, Circuit Judge

        George Fuentes, an employee of the Public Works Department of the Borough of

Watchung, brought suit against Watchung, alleging hostile work environment and failure

to promote claims under Title VII of the Civil Rights Act of 1964. After discovery,

Watchung moved for summary judgment as to both claims and the District Court granted

the motion. We will affirm.

## I. Factual and Procedural History

Fuentes, who is of Puerto Rican descent, began working for Watchung's Public

Works Department as a laborer in 1988. In New Jersey, a public works employee can

apply to become a certified public works manager after meeting certain educational pre-

requisites and passing a state-administered examination. *See* N.J.S.A. 40A:9-154.6b. In

1999, Fuentes began attending public works educational classes in order to qualify to

become a certified public works manager. He chose to attend classes during the work

day, something Watchung permitted him to do.[1] He was reimbursed for these classes

under Watchung's "Personnel Policy and Procedures," which allows municipal

employees to be reimbursed for certain pre-approved education and training. He was also

paid his normal salary for any time spent in class.

Another Public Works Department employee, Charles Gunther, attended similar

classes during roughly the same time frame as Fuentes. Gunther, however, attended

classes in the evenings, after his workday was completed. Fuentes and Gunther both sat

for the public works exam in October 2000. Gunther passed the exam and Fuentes failed.

On October 17, 2000, Gunther was certified as a public works manager. Fuentes again

---

[1] Fuentes conceded in his deposition that he learned at some point that these classes were also offered after work hours.

2

sat for the exam on the next available date, and passed. He was certified as a public works manager effective April 17, 2001.

Donald Scotti was Watchung's Director of Public Works between 1988, the year Fuentes began working for Watchung, and 2003, when Scotti retired. In 2002, Watchung's Borough Administrator asked Scotti to recommend someone to become the Supervisor of Public Works. It was understood that the next Supervisor, who would work directly below Scotti, would replace Scotti when he retired. Scotti recommended Gunther and not Fuentes because he believed Gunther to be a better employee; Gunther had prior experience in the landscaping and property maintenance field; and Gunther was licensed as a commercial pesticide applicator. Scotti found Gunther to be "more reliable, [to have] showed more initiative, [to have] performed tasks within the Borough even separate and apart from his job with the Public Works Department, [and] seemed to have better understood the issues that went into the CPWM examination and was simply the better candidate." (J.A. 79-80.) Gunther also lived locally, unlike Fuentes, who lived more than 70 miles away, a fact that would make it easier for Gunther to respond timely to any work emergencies. Gunther became Watchung's Supervisor of Public Works on May 1, 2002.

Fuentes claims, and Watchung does not deny, that in his presence in March of 1998, Scotti told a joke derogatory to Puerto Ricans[2] "at least two times." Fuentes did not

---

[2] Fuentes testified that Scotti said, "Anybody know what a Puerto Rican and a cue ball have in common[?] [T]he harder you hit them the more English you get out of them." (J.A. 58.)

complain to Scotti about the joke; indeed, he admits that he, too, told jokes with "ethnic references" in the workplace. When asked who the jokes were about, he answered: "It could be Chinese. African American[;] it could be an Irish joke. It could be anybody who is Irish." (J.A. 60.) Fuentes does not believe he offended anyone "because everyone was involved in telling jokes there. So if one person tells a joke and the other guy tells a joke and there [are] four guys and four guys tell jokes, then nobody can feel offended because they are telling the joke and we are in closed quarters." (*Id*.) Fuentes also claims that Scotti made a pejorative comment about Puerto Ricans and several pejorative comments about African-Americans. As for the failure to promote claim, it is Fuentes' position that this case is all about Scotti being "a racist bigot" who favored Gunther over Fuentes "because of his race/ethnicity." Appellant's Br. at 17.

Fuentes filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2002. In a letter dated August 28, 2003, the EEOC advised Fuentes that it had forwarded his request to the Department of Justice, the agency responsible for handling complaints against governmental bodies. On March 17, 2004, the Department of Justice issued a right to sue letter. Fuentes filed his complaint on June 15, 2004.

## II. Discussion

We have jurisdiction under 28 U.S.C. § 1291. Our review of a grant of summary judgment is de novo. *Holender v. Mut. Indus. N. Inc.*, 527 F.3d 352, 354 n.1 (3d Cir.

4

2008). To establish a hostile work environment claim under Title VII, an employee must demonstrate that "(1) [he] suffered intentional discrimination because of [his ethnicity], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same [ethnicity] in that position, and (5) the existence of *respondeat superior* liability." *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007) (internal quotation marks and citation omitted; second brackets in original). We have held that "offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (internal quotation marks and citation omitted). Instead, the "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* (internal quotation marks and citation omitted). We do not review individual incidents in isolation; rather, we look at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it involves physical threats or humiliation, and whether it interferes with the employee's work performance. *Id.* at 262-63.

We agree with the District Court's determination that, when the conduct complained of by Fuentes is viewed not in isolation but under the totality of the circumstances, Fuentes has failed to raise a material issue of fact as to whether he suffered intentional discrimination because he was Puerto Rican. The only relevant, non-

5

hearsay evidence Fuentes has produced is a derogatory joke told more than once and a pejorative comment about Puerto Ricans. While unfortunate, when viewed in the context of 15 years of employment, those two complaints surely do not rise to the type of extreme harassment that changed the terms and conditions of his employment. *Caver*, 420 F.3d at 262.

An employee alleging a failure to promote claim under Title VII proceeds under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The first step requires the employee to establish a prima facie case of discrimination, that is, he must establish (1) that he was a member of a protected class, (2) that he was qualified for the job to which he applied, and (3) that another individual, who was not a member of the protected class, was treated more favorably. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). If the employee makes out a prima facie case, the burden of production shifts to the employer to establish a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer does so, the burden of production shifts back to the employee to show that the employer's proffered reason was a pretext for actual discrimination. *Id.*

We agree with the District Court that Fuentes made out a prima facie case: (1) he established that he was of Puerto Rican descent and was thus a member of a protected class, (2) he passed the qualifying exam, and (3) Gunther, who is white, got the job. We also agree that Watchung proffered evidence of a legitimate, nondiscriminatory reason for

6

choosing Gunther over Fuentes—namely, that Gunther was a better candidate based on his job performance, the fact he passed the qualifying exam on his first attempt, his prior work experience, his various licenses, and his proximity to Watchung. Finally, we agree with the District Court that Fuentes failed to raise a material issue of fact as to his claim that Watchung's proffered legitimate reasons for hiring Gunther over him were pretextual. Indeed, Fuentes concedes that at the time Scotti recommended Gunther for the position of Supervisor of Public Works, "Gunther was a Certified Public Works Manager, [he] held a Commercial Pesticide Applicator's License, [he] was a licensed New [J]ersey State Fire Inspector and [he] had various other qualification[s], education and job performance records which were considered by the Mayor and Council to make Gunther most suited for the position." (Appellant's Br. 17.) Despite these concessions, Fuentes argues that Gunther was chosen over him because of his ethnicity, but, again, only identifies in support of that argument the joke and comment which we earlier found wanting. There simply is not a material issue of fact from which a factfinder could determine that Watchung failed to promote Fuentes because he was Puerto Rican.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.