NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3756
_____

JANIS STACY,

Appellant

v.

LSI CORPORATION; AGERE SYSTEMS, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-10-cv-04693)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 29, 2013

Before:  FISHER, JORDAN and SLOVITER, *Circuit Judges*.

(Filed: November 13, 2013)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Janis Stacy appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of Agere Systems, Inc. ("Agere Systems") and its parent company, LSI Corporation ("LSI Corp."), (collectively "Defendants") and denying as moot Stacy's motion for partial summary judgment. For the reasons that follow, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Defendants employed Stacy as an engineer from 1998 through 2008. When Stacy was hired, she had a traditional masculine appearance, wore male clothing, and went by the name "Jim." In 2002, Stacy was diagnosed with a medical condition known as gender identity disorder ("GID"), which arises from a profound divergence between an individual's assigned birth sex and the person's inner gender identity. Upon being diagnosed with GID, Stacy began undergoing treatment, which included, among other things, psychological counseling and hormonal therapy.

In 2005, as part of her treatment, Stacy proceeded to full-time participation in what she refers to as the "real world experience," which involved making a full transition to one's gender identity. A35. Pursuant to this treatment, Stacy disclosed her gender identity at work through a series of conversations and group presentations under the

supervision of Human Resources.[1]  By mid-2005, Stacy had fully transitioned her appearance at work from male to female, at which time she became known as "Janis" and wore feminine attire.  She also had multiple surgeries to change her physical appearance.[2]

In 2006, following a return from one of her GID-related surgeries, Stacy was reassigned to a different group.  There, Stacy reported directly to Bob Radaker, who in turn reported to Mr. Lawrence.  Soon after her transfer, Stacy complained to Mr. Lawrence that she believed she had been rated unfairly on her performance review and unfairly compensated by Mr. Stasak, in 2005.  Mr. Lawrence investigated the allegations, the results of which revealed that Stacy had received the exact same performance rating in 2004, prior to her GID disclosure, and that she received a salary increase as a result of her 2005 performance evaluation that placed her in the top ten percent of the highest paid engineers in the entire company.

In 2007, Agere Systems merged with LSI Corp.  Agere Systems, the company for which Stacy worked, had a policy expressly prohibiting gender identity discrimination,

---

[1] Stacy testified that Norm Lawrence, the director of another group, made negative comments toward her during one of her gender identity presentations.  She contends that Mr. Lawrence invited her to make the presentation to his group and stated that: "[Y]esterday he would have been considered a bigot, and today knowing [Stacy] he is rethinking things." A58-60.

[2] Stacy provided testimony that it was at this time that she began to experience rejection and backlash at work.  A38-46, A68-69, A81-83.  She alleges that her director, George Stasak, suddenly became non-interactive towards her, A35-36, that another supervisor referred to her in the male pronoun, even after her transition, A45-46, and that other employees made similar negative comments, A68.

3

but LSI Corp. did not.[3] Following the merger, Defendants engaged in a series of layoffs, known as the Force Management Program ("FMP"), in response to the declining economy. Pursuant to the FMP, Defendants eliminated approximately 3,770 positions between April 2007 and December 2007. In December 2007 or January 2008, Mr. Lawrence was instructed by a superior to reduce his workforce by eight employees. In making his decision, Mr. Lawrence testified that he first determined which job positions and functions would be impacted by the FMP. A132-33. He then consulted with human resources personnel, who provided him with the names of the affected groups of employees so that he could conduct a skills assessment.

One of the groups selected for the FMP was Stacy's group, which supported a certain product line in which Defendants decided to no longer invest. Stacy was the lead engineer in the three-member group. In evaluating the group, Mr. Lawrence testified that he selected five particular skills critical for the function of his team moving forward: execution, teamwork, communication, technical versatility, and customer focus. A357. In this assessment, Mr. Lawrence ranked Stacy the lowest of the three. He presented his findings to his superiors and discussed his rationale. After the majority of the managers agreed with his findings, he made the decision to terminate Stacy. Stacy was notified of

_____

[3] Stacy provided a statement that she approached Mr. Lawrence on several occasions inquiring as to the potential effect of the merger on Agere Systems' existing anti-discrimination policy. She alleges that Mr. Lawrence made no attempt to calm her fears and failed to provide her with a direct response as to whether or how the policy would be changing. A35.

her termination on January 16, 2008. She testified that, during a conversation regarding her termination, Mr. Lawrence informed her that she "was being freed from [her] negative history with [Mr. Stasak] and the corporation."[4]  A520.

On September 14, 2013, Stacy filed a complaint alleging that Defendants committed unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); sex and disability discrimination and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA"); and unlawful gender-identity, sex, and disability discrimination and retaliation in violation of the Allentown Human Relations Act ("AHRA").  The District Court approved of partial dismissal of Stacy's claims relating to certain allegations of post-termination discrimination.  Stacy then moved for partial summary judgment on her AHRA claim and Defendants moved for summary judgment on all of Stacy's claims.  Defendants conceded, for purposes of summary judgment, that Stacy established a *prima facie* case of discrimination.  The District Court then found that Defendants proffered sufficient evidence that Stacy was terminated based upon a legitimate non-discriminatory reason (Mr. Lawrence's skills assessment).  After concluding that Stacy failed to show that Defendants' proffered reason for her termination was a pretext for unlawful discrimination, the Court granted Defendants' motion for summary judgment and denied Stacy's motion for partial summary judgment as moot.

---

[4] Stacy testified that she was not certain of the exact wording of Mr. Lawrence's alleged statement and there were no witnesses present when it was made.  A520.

Stacy's timely notice of appeal followed.

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 1331, 28 U.S.C. § 1367(a), and 42 U.S.C. § 2000e-5(f)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Summary judgment is appropriate only where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet this burden, "the moving party must show that the non-moving party has failed to establish one or more essential elements of his or her case." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). The reviewing court should "view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor." *Id.*

## III.

Defendants do not dispute Stacy's *prima facie* case of sex, disability, or gender identity discrimination and Stacy does not dispute the District Court's finding that Defendants proffered a legitimate, non-discriminatory reason for her termination. Accordingly, the only issue presented on appeal is whether a reasonable jury could find

that Defendants' articulated explanation for Stacy's termination was a pretext for discrimination.

Where a plaintiff successfully establishes a *prima facie* case of employment discrimination, courts undertake the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this analysis, once a plaintiff establishes a *prima facie* case, the burden of production switches to the defendant to provide a legitimate non-discriminatory reason for its employment decision. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). If the defendant provides such justification, the burden of persuasion is on the plaintiff to show, by a preponderance of the evidence, that the employer's proffered justification is pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). To meet this burden, the plaintiff must either: (1) discredit the proffered reason through circumstantial or direct evidence; or (2) adduce evidence "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 764.

To support her position that Defendants' proffered justification for her termination was pretext, Stacy first points to the facts as presented. Second, she argues that she submitted evidence from which a reasonable jury could find that discrimination motivated her termination. Third, she argues that reversal of the District Court's grant of summary judgment requires reversal of its denial of her motion for partial summary judgment. We address each of these contentions in turn.

A.

Stacy first argues that a reasonable jury could find that Defendants' proffered reason for her termination was a pretext for unlawful discrimination. In support of her argument, she alleges that: (1) she was replaced by another employee from outside of her work group; (2) she was selected for termination prior to Mr. Lawrence's skills assessment; (3) the skills assessment suffered from serious weaknesses; (4) Mr. Lawrence chose her group for the purpose of targeting her; and (5) Mr. Lawrence's explanation for her termination has changed over time.

We are unpersuaded by Stacy's allegations. First, Stacy attacks Defendants' decision to replace her with another employee, which she believes discredits their reduction-in-force argument. However, Stacy does not argue that Defendants *hired* another individual to replace her; rather, she argues only that another *current* employee assumed her responsibilities. We find that action to be consistent with Defendants' reduction-in-force argument.

Stacy also attacks the skills assessment conducted by Mr. Lawrence. She argues that she was selected for termination prior to the skills assessment, that the assessment was biased, and that her group was chosen only for the purpose of terminating her. We find these arguments lacking in record support. The record demonstrates that Mr. Lawrence was directed by a superior to reduce his workforce. Based upon this instruction, he selected several groups of employees that would be impacted. Mr.

8

Lawrence then chose the skills to be evaluated based upon those he believed would be most beneficial to Defendants moving forward. Out of the members in her group, Stacy was ranked the lowest. Because Stacy failed to put forth any evidence to contradict these facts, her allegations must fail.

Finally, Stacy challenges Mr. Lawrence's alleged inconsistent explanations for her termination. She points to four allegedly different explanations provided by Mr. Lawrence, including: (1) to give her a "fresh start;" (2) because of her low ranking in his performance evaluation; (3) because another employee who "rated higher" than her in the skills assessment assumed her responsibilities; and (4) based upon the skills assessment. According to Stacy, these arguments contradict one another and would make Mr. Lawrence less believable to a jury. We disagree. The explanations to which Stacy points are consistent with one another and with Defendants' proffered reason for her termination. Because the allegations upon which Stacy's argument hinges lack record support and fail to demonstrate the weaknesses or inconsistencies necessary to place doubt upon Defendants' proffered legitimate justification for her termination, Stacy's first argument fails.

## B.

Stacy next argues that she submitted evidence from which a reasonable jury could find that discrimination motivated her termination. Stacy points to: (1) the fact that her termination coincided with a change in corporate policy removing the prohibition on

9

gender identity discrimination; (2) the alleged negative comments made by Mr. Lawrence; (3) the backlash she experienced under Mr. Stasak and other employees; and (4) the alleged discriminatory reason Mr. Lawrence provided her for her termination.

We find these arguments lacking in record support. As previously mentioned, Defendants have set forth a legitimate explanation for Stacy's termination, which she does not dispute. Therefore, in order to prevail, she must either discredit Defendants' reason or prove that discrimination was more likely than not a motivating factor in her termination. *Fuentes*, 32 F.3d at 764. Here, the record reveals that Defendants were engaging in a series of layoffs due to the declining economy and, as a result, had already laid off more than three thousand employees prior to Stacy's termination. The record also indicates that Stacy supported a product line in which Defendants decided to no longer invest and it was only at that point that Stacy's group was selected for the FMP. Stacy's argument in support of her pretext claim appears to consist of nothing more than baseless allegations. We find no discriminatory connection between the merger, the alleged changes in policy, and her termination. We also find no evidence in the record, beyond her own testimony, to support any of the assertions she makes regarding discriminatory comments and backlash. Accordingly, we find Stacy's argument insufficient to rebut Defendants' justification for her termination.

Because Stacy is unable to point to any inconsistencies or contradictions in Defendants' proffered reason and has failed to adduce any other evidence that would

10

permit a reasonable factfinder to find that this explanation was a pretext, she has failed to meet her burden under the *McDonnell Douglas* framework. Thus, the District Court's grant of summary judgment in favor of Defendants was proper.

C.

Finally, Stacy argues that reversal of the District Court's grant of summary judgment in favor of Defendants requires reversal of the District Court's denial of her motion for partial summary judgment. Because we conclude above that the District Court's grant of summary judgment was proper, Stacy's final argument fails.

V.

For the reasons stated above, we will affirm the order of the District Court.

11