NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-1947
_____

DREW FRANCIS,
                              Appellant

v.

LEHIGH UNIVERSITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-10-cv-04300)
District Judge:  Honorable Petrese B. Tucker

Submitted Under Third Circuit LAR 34.1(a)
November 13, 2013

BEFORE:  HARDIMAN, SCIRICA, and NYGAARD, *Circuit Judges*

(Filed: March 28, 2014 )

_____

OPINION OF THE COURT
_____

NYGAARD, *Circuit Judge.*

Drew Francis appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment to Lehigh University, his former employer.  For the reasons that follow, we will affirm.

I.

We write non-precedential opinions "primarily to explain to the parties the basis for the court's decision."  *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006).  Therefore, because the parties are familiar with the factual and procedural backgrounds of this case, we will relate only those facts necessary to explain our analysis and decision.

Francis was a tenured professor in the Department of Theatre at Lehigh University.  He was appointed to this position in July of 2001.  In November of that same year, Francis fell off of a ladder and fractured a foot, ankle, and his back.  After receiving medical clearance to return to work, Francis presented the University with a list of twelve accommodations.  He received many of these accommodations though 2008.

Vaguely reminiscent of David Mamet's drama *Oleanna*, a female student at Lehigh approached Professor Pam Pepper, then a professor in the Department of Theatre, and related concerns that Francis and another student were engaged in a sexual relationship and that she feared Francis was taking advantage of this student.[1]  This conversation took place in the fall of 2007.  The reporting student also admitted to having

---

[1] *Oleanna* is a two-character play by David Mamet, and focuses on the power struggle between a university professor and one of his female students, who accuses him of sexual exploitation and, by doing so, destroys his chances of being given tenure.  Mamet, David. *Oleanna*.  New York: Dramatists Play Service, 1983.  Print.

a sexual relationship with Francis. Pepper asked the student to file a complaint with the University's Harassment Policy Officer, but the student declined. The University's Harassment Policy prohibited relationships between faculty and students which created a supervisory conflict of interest.[2]

New charges of sexual impropriety with students surfaced against Francis in the fall of 2008. These allegations came to light in conversations Erica Hoelscher, Francis' ex-wife and member of the Department of Theatre, had with Pepper and another faculty member, Augustine Ripa, regarding her divorce from Francis. Hoelscher related that Francis had an affair with a student during a period of time when Francis was supervising the student's work.

Based on this information, Pepper and Ripa contacted the Dean of the College of Arts and Sciences. After a consultation with the Harassment Policy Officer, the University began an investigation. While this investigation was proceeding, Francis informed Pepper that he was having further medical issues and that he might need surgery on his hand. Francis raised concerns with Pepper that he may not be able to do his job. Francis claims Pepper responded that they would "cross that bridge when we get there."

In May of 2009, the results of the University's investigation were presented. The investigators had determined that Francis violated University policy by engaging in graphic sexual discussions with one student and engaging in a sexual relationship with another student while acting as her supervisor and/or issuing grades to her. The

---

[2] No formal investigation was begun at this juncture because no complaint was filed.

investigators also noted that Francis was not truthful during interviews and that he neither expressed remorse nor accepted responsibility for his actions. The report concluded by recommending that Francis be removed from the University environment and that his employment be terminated.

A month later, the University's Provost provided Francis with a copy of the investigator's report. Francis was also notified that the University would pursue dismissal proceedings against him. Francis was given a three-day evidentiary hearing. He ultimately admitted to a sexual relationship with a student that had begun in the summer of 2007. Francis further admitted that this relationship continued until his ex-wife confronted him about it. The investigation determined that Francis' sexual relationship with this student created a conflict of interest and violated University policy because Francis took no steps to resolve it appropriately.

After reviewing the testimony and other evidence, the University's Faculty and Personnel Committee found that Francis had violated University policy and recommended that he be fired for cause. The University's Board of Trustees accepted the Committee's recommendation and voted to terminate Francis' employment in May of 2010.

Meanwhile, Francis had filed discrimination charges against the University with the Equal Employment Opportunity Commission in November of 2009. He charged that shortly before Pepper had filed an internal complaint against him, he had notified her that he may need hand surgery and could require further accommodations from the University. Francis argued that other University employees with disabilities who had

4

violated the harassment policy were not dismissed, but instead were required to sign a confidential agreement stating that they would not violate the policy again. The EEOC could not find a violation of federal law, and issued Francis a Notice of Right to Sue.

Francis then filed suit in the District Court, bringing claims under the Americans with Disabilities Act and under 42 U.S.C. § 1983. After partially answering the complaint, the University filed a motion to dismiss the claim brought under § 1983, which the District Court granted. That disposition has not been appealed. Upon the completion of a period of discovery, the University filed a motion for summary judgment on the remaining claim, which the District Court also granted. Francis has timely appealed the grant of summary judgment, and we will affirm.

## II.

We review a district court's grant of summary judgment *de novo*, thereby applying the same standard as the District Court. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Only where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" is summary judgment appropriate. FED.R.CIV.P. 56(a). This burden is met only when the moving party has shown that the non-moving party has failed to establish one or more of the essential elements of his or her case. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Ed.*, 470 F.3d 535, 538 (3d Cir. 2006). We "view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor." *Id.*

## III.

Where a plaintiff has successfully established a prima facie case of discrimination, we employ the ubiquitous burden shifting analysis first set by the Supreme Court in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973). Under this analysis, once a plaintiff has established a prima facie case, the burden of production switches to the defendant to provide a legitimate, non-discriminatory reason for its decision. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). To establish pretext, a plaintiff must either discredit the proffered reasons through direct or circumstantial evidence or adduce evidence "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The University does not dispute Francis' prima facie case of discrimination and Francis does not challenge the District Court's finding that the University has proffered a legitimate, non-discriminatory reason for his termination. Therefore, the sole issue on appeal is whether the University's explanation for Francis' termination was but pretext for discrimination.

IV.

In support of his contention that the University's proffered reasons for terminating him were pretext for discrimination, Francis argues three points: first, that similarly situated employees were treated more favorably, second, that he was terminated after disclosing concerns about a medical condition, and third, that he did not commit sexual harassment. Like the District Court, we are unpersuaded by Francis' arguments.

First, Francis has pointed to three individuals he maintains were similarly situated to himself, but were treated more favorably by the University. Here, however, the persons identified by Francis are not similarly situated. Francis points to a 'Dr. B.' as a comparator who the University did not fire despite the filing of a sexual harassment claim against him by a student. This individual, however, did not engage in a continuing sexual relationship with students under his supervision. He did acknowledge a single incident of inappropriate behavior while he was inebriated. Further, Dr. B. did not lie to University investigators, but instead was candid and truthful from the outset of the investigation, where Francis was not. Indeed, Dr. B. accepted responsibility for his behavior and even went so far as to propose remedial actions for his conduct.

Next, Francis points to a member of the Department of Theatre, Ms. K.F., who he witnessed kissing a student at an off-campus location. No complaint of harassment was ever filed against K.F. nor did Francis introduce any evidence that K.F. supervised this student or lied about the conduct in question to University investigators, as Francis had done. Francis also pointed to a professor in the University's Department of English who he claimed had had a sexual relationship with a student, but was not fired. This professor, identified in the record as 'Dr. T.B.,' was not similarly situated to Francis. No complaint had even been filed against T.B., nor was Francis able to produce any evidence that T.B. had a sexual relationship with a student under his supervision. No evidence was offered that T.B. had lied to University investigators.

Francis' remaining arguments are equally unavailing. He claims, for example, that his employment was terminated after he informed Professor Pepper of his hand condition.

7

The record, however, clearly shows that the University began its investigation into Francis' sexual improprieties well before his discussion with Pepper. Additionally, the record is void of any evidence that University investigators took Francis' disability into account during the termination proceedings.

Francis' argument that he has established pretext because the University replaced him with a non-disabled person is meritless. While such a replacement may support the foundation of a prima facie case, we have held that this is not necessarily so when discussing pretext: "[s]uch an inference may be acceptable at the prima facie state of the analysis . . . but not necessarily at the pretext stage, where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity." *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998) (internal citations omitted). Standing alone, the fact that Francis was replaced by a non-disabled person is not enough to support an accusation of pretext. *See id.* We do not say that such evidence is never relevant; only that it cannot "be viewed in a vacuum." *Id.* Instead, on summary judgment, courts are to consider the whole record in deciding "whether the [employment] decision was motivated by" the employee's disability. *Id.* Having considered the same record as the District Court, we find no error in its conclusion that Francis has failed to establish pretext.[3]

---

[3] We also reject Francis' contention that he did not violate the University's harassment policy. Francis engaged in a sexual relationship with a student under his supervision, which he ultimately admitted to. In any universe, such actions violate the University's harassment policy.

V.

The judgment of the District Court will be affirmed.